FILED

**United States District Court**
**Northern District of Alabama** 00 JUL 27
**Eastern Division**

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| **Patricia Lynne Lumpkin,** | ] |
| Plaintiff(s), | ] |
| vs. | ] CV-99-N-2248-E |
| **Weiser Security Services, Inc.,** | ] |
| Defendant(s). | ] |

**ENTERED**
JUL 2 7 2000

**Memorandum**

The plaintiff, Patricia Lynne Lumpkin, brings this action against defendant, Weiser Security Services, Inc., under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, alleging sexual harassment and retaliation, as well as state law claims of outrage, invasion of privacy, and negligent supervision and retention. Presently before the court is the defendant's motion for summary judgment (Doc. No. 15). For the reasons discussed below, the defendant's motion will be denied in part and granted in part.

**I.   Background.**

The plaintiff was hired by the defendant on April 4, 1997, as a security guard. She alleges that between June and September of 1997, she was subjected to a male co-employee, Leonard Yearsley, leaving pornographic pictures[1] and magazines for her to discover on at least six occasions and calling her while they were working and telling her

---

[1] The plaintiff alleges that the pictures varied, and were sometimes pictures of unclothed women's breasts, genital areas, and sexual activity; on another occasion, the pictures were cut up sections of breasts and vaginal areas; and on another occasion, there were pictures of nude women and a red marker had been used to make geometric shapes on the photographs. On the last occasion before the plaintiff resigned, she asserts that she found pictures of male organs on the desk, in the desk, on the floor, and around the trash can at her guard post. Plaintiff's response (Doc. No. 17) at 3-4.



sexually explicit jokes and making sexual innuendoes. The plaintiff alleges that she reported the incidents to her immediate supervisor, Captain James Duncan, and/or branch supervisor, Chuck Remington, and yet the incidents continued. The plaintiff attempted to resign in September of 1997, but asserts that the defendant convinced her continue in a part-time capacity that would not put her in contact with Mr. Yearsley. However, before her new position began during her two week notice period, the plaintiff alleges she again found more pictures in the guard shack upon relieving Mr. Yearsley, this time of male organs. The plaintiff did not return to work for the defendant after this incident in October of 1997.

The plaintiff alleges that she accepted a second term of employment with the defendant in June of 1998, after being told that she would be working at a different location from Mr. Yearsley. The plaintiff asserts that the new branch manager, Michael Matz, told her he "could facilitate the dismissal of her E.E.O.C. complaint since she had come back to work for Weiser," but the plaintiff refused to dismiss her complaint. Plaintiff's response (Doc. No. 17) at 2. On August 18, 1998, the plaintiff alleges that she refused to sign a written counseling warning by Captain Replogle, who allegedly told her that he was told to "write her up" for anything he could. She alleges that upon attempting to leave with the form to discuss the matter with Mr. Matz, Captain Replogle grabbed the plaintiff's arm to get the form from her and followed the plaintiff to her car in attempting to obtain the form. The plaintiff alleges that although Captain Replogle was suspended for his conduct, she was told that she would be written off the schedule until she met with Mr. Matz . The plaintiff alleges she called Mr. Matz for three weeks but he never returned her phone call. The plaintiff has not worked for the defendant since that time.

## II.     Summary Judgment Standard.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met her burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, she may not merely rest on his pleadings. *Id.* at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and

3

upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judges's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11(1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989).

Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## III.  Discussion.

### A. Sexual Harassment.

#### 1.  *Prima facie case.*

In order to establish a prima facie case, the plaintiff must show that the actions of the defendant altered the condition of the workplace, creating an objectively abusive and hostile atmosphere. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 20-21 (1993) ("When the workplace is permeated with [conduct] that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated.") (internal citations omitted).

The plaintiff must prove that the harassment objectively and subjectively created a hostile environment. *Harris*, 510 U.S. at 21 (holding that a defendant's conduct must be severe or pervasive enough to create a work environment a reasonable person would find hostile or abusive and that the plaintiff herself subjectively views as hostile). In determining

5

whether the defendant created a hostile work environment, the court must consider the frequency and severity of the alleged conduct, whether the conduct was threatening or humiliating, whether the conduct unreasonably interferes with the plaintiff's work performance, and the plaintiff's psychological well-being. Although all of these considerations should be taken into account, no single factor is required. *Harris,* 510 U.S. at 23; *Edwards v. Wallace Community College*, 49 F.3d 1517, 1521-22 (11th Cir. 1995). Whether conduct is severe and pervasive is determined by the totality of the circumstances. *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).

Based on the above case law and evidence submitted by the plaintiff, the court finds that she has created a genuine issue of material fact on the issue of whether the defendant's conduct was severe or pervasive enough to satisfy the prima facie threshold. The defendant argues that the plaintiff cannot show that she subjectively found the pornographic pictures to be abusive because she allegedly had been exposed to such material in junior high school, had seen such material when cleaning her brother's house, had composed pornographic stories about lesbian lovers, and had pulled up her shirt to flash a trucker on one occasion. Defendant's reply (Doc. No. 21) at 3-4. The court dismisses the defendant's attempt to turn the attention away from Mr. Yearsley's allegedly harassing behavior to disputed facts about the plaintiff's history, which have nothing to do with the presence of pornographic material in the workplace. Although the defendant also argues that the plaintiff returned to her employment after several months, which is evidence that her environment was not hostile, the plaintiff asserts that it was understood her employment

6

would be at a different location away from Mr. Yearsley. Accordingly, the court finds that the plaintiff has at least created a genuine issue of material fact as to this issue.

    2.    *Affirmative defense.*

In *Faragher,* the Supreme Court held that an employer will be vicariously liable to an employee who was subjected to an actionable hostile environment if that environment was created by a supervisor. An employer, however, has available to it an affirmative defense if: (1) it exercised reasonable care to prevent and correct promptly any harassing behavior;[2] and (2) the employee unreasonably failed to take advantage of any preventive or corrective measures provided by the employer to prevent harassment.[3]

It is undisputed that the defendant's policy against discrimination or sexual harassment prohibits, "Displaying sexually suggestive objects, pictures or drawings." Exhibit F, attached to Plaintiff's response (Doc. No. 17). The plaintiff reported the incidents to either her immediate supervisor, Captain Duncan, or the branch manager, Mr. Remington. After one incident, the plaintiff spoke with Major Gillney because Captain Duncan was on vacation. Although Mr. Yearsley's personnel file reflects that he was either given verbal or written warnings by Captain Duncan or Mr. Remington, it is undisputed that

---

[2] As to the first prong, the *Faragher* court held that "[w]hile proof that an employer has promulgated an antiharassment policy with a complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense." *Faragher*, 118 S.Ct. at 2279.

[3] The affirmative defense only applies if the plaintiff has not suffered a tangible employment action. The parties do not argue this issue although it is clear the result of the alleged harassment was that the plaintiff was forced to quit because of the continuing harassment. Regardless, the court finds that there is a genuine issue of material fact as to whether the defendant could establish an affirmative defense.

7

the instances of pornographic material continued and that other than these verbal or written warnings, Mr. Yearsley was not disciplined in any manner.

The defendant alleges that Mr. Remington asked the plaintiff on August 11, 1997, if he needed to move Mr. Yearsley and that she replied "No. There's no need to do any of that. He just needs to stop leaving his trash magazines around." Exhibit B, attached to Motion for Summary Judgment (Doc. No. 15), at 36. First, it is clear that the incidents continued to occur after this meeting on August 11, 1997. Second, the plaintiff asserts, "the only remedy Weiser offered Lumpkin was to either a [sic] grin and bear it or take a part-time job. Weiser was not going to remove Yearsley because it was so short staffed." Plaintiff's reply (Doc. No. 22) at 6. In support of her argument, the plaintiff cites to her sworn EEOC complaint in which she stated that "the Major told me it would be nearly impossible to transfer me or him to another post because we were so short staffed." Exhibit 2, attached to Plaintiff's reply (Doc. No. 22).

The court finds that based on the evidence set forth by the plaintiff in this case, there is a genuine issue of material fact as to whether the defendant exercised reasonable care to prevent and correct promptly the alleged harassing behavior of Mr. Yearsley.

**B.     Retaliation.**

In order to make out a prima facie case of retaliation, the plaintiff must show (1) that she was engaged in statutorily protected expression; (2) that the defendant took an adverse employment action against her; and (3) a causal link between the protected expression and the adverse action. *Raney vs. Vinson Guard Service, Inc.,* 120 F.3d 1192, 1196 (11th Cir. 1997). "Once a prima facie case has been established, the defendant may come forward

with legitimate reasons for the employment action to negate the inference of retaliation. If the defendant offers legitimate reasons for the employment action, the plaintiff then bears the burden of proving by a preponderance of the evidence that the reasons offered by the defendant are pretextual." *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir.1993); see *Reynolds v. CSX Transportation, Inc.*, 115 F.3d 860, 868 (11th Cir. 1997).

The defendant asserts that no adverse action has been taken against the plaintiff because she is still technically employed by the defendant. However, it is undisputed that the plaintiff has not worked for the defendant since late August or early September of 1998. The defendant asserts through Mr. Matz's testimony that:

> Weiser had tried repeatedly after September 1998 to get in touch with Ms. Lumpkin to schedule her to work but had either been unsuccessful in reaching her or she had refused to work. The last time Weiser tried to contact her was around December 1998 or January 1999. Mr. Matz testified that "I made an honest effort to try to get hold of her. Several times she told us she wouldn't go to certain places. One time she told us she would then didn't show up and that caused some problems for the client in that I had to find somebody else quickly." Eventually someone at the number Weiser had for Ms. Lumpkin informed it that no one lived there by that name. The reason Ms. Lumpkin had not received calls from Weiser was due to her refusal to work at the jobs offered and ultimately because she moved. Therefore, even if the Court considers that Ms. Lumpkin was discharged, which as of April 2000 Mr. Matz testified she was not, there is a rational non-retaliatory reason: she refused the work offered and then moved to a different address and phone number that Weiser did not have for some time.

Defendant's reply (Doc. No. 21) at 14 (citations omitted). The plaintiff, however, testified that Captain Replogle and Major Gillney called her into the office and told her she was being written off the schedule until she met with Mr. Matz. The plaintiff asserts that she called Mr. Matz for three weeks but no one returned her calls. Exhibit A, attached to Plaintiff's response (Doc. No. 17), at 127; 134-137. The plaintiff also testified that her current address and phone number is posted in her second employment file. Exhibit 3, attached

9

to Plaintiff's reply (Doc. No. 22). Accordingly, the plaintiff has created a genuine issue of material fact as to whether she was constructively terminated by the defendant by removing her from the schedule and not contacting her about further assignments.

The defendant also argues that the plaintiff cannot establish a causal link. However, the court finds that the plaintiff has created a genuine issue of material fact on this issue as she asserts that on her third day of employment with the defendant in June of 1998, Mr. Matz and Major Gillney came to the plaintiff's guard post to discuss her EEOC complaint. The plaintiff testified that Mr. Matz told her that "since I was employed again by Weiser that if I told him that I just wanted to disregard the problems that had happened on the previous employment that he would call, make the phone call to Werner . . . and would have it all dismissed and then that would be the end of it." Exhibit A, attached to Plaintiff's response (Doc. No. 17), at 105. The plaintiff further testified that Mr. Matz stated that he "would just go ahead and have it, make the phone calls and have it dismissed and it would be just water under the bridge since I was working with them again and that I wasn't working with Mr. Yearsley." *Id.* at 106. The plaintiff testified that Mr. Matz's statements were not worded as a "question, he did not say will you or are you going to, he worded it letting me know what he would do if I would just give him the go-ahead. It was more of an assumption statement." *Id.*

The plaintiff also testified that on August 18, 1998, Captain Replogle issued her a coaching and counseling form, which she refused to sign because she felt she had not violated company policy. The plaintiff testified that Captain Replogle tried to take the form out of her hand and

10

> [h]e grabbed me by the arm, slung me into the wall and said that he, that he wanted that paper right then and there. I told him, no, I was taking it to the office and to let them settle the dispute, because that was the silliest thing I had ever seen put on paper according to our company guidelines.
> 
> And then he told me that he was told, . . . in a very loud voice that he was told to write me up for counseling for anything that he thought would stick or anything that he thought he could find a loophole in, one minute lateness, whatever, being sick, he didn't, he said office told me they didn't care what it was, get counseling forms on you. . . .
> 
> I tried to go out the door, he grabbed my arm again. . . . I went outside to the car. I tried to get in my car. He came with his one arm over one door and tired to come in my car after me and I told him that he could either remove hisself [sic] from my vehicle where I could shut the door or I would shut him in it. He moved back, I closed the door and I went immediately to Weiser Security office.

*Id.* at 117-118. It is undisputed that Captain Replogle was suspended for three days. The court finds that the plaintiff has created a genuine issue of material fact on the causal link issue.

Based on the evidence, the court finds that the plaintiff has at least established a genuine issue of material fact on her retaliation claim.

**C.    Outrage.**

The plaintiff also asserts state law claims of outrage caused by the alleged harassing actions of Mr. Yearsley. Under Alabama law, to state a claim for outrage, the plaintiff must allege and prove "that the defendant's conduct (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." *Thomas v. BSE Indus. Contractors, Inc.*, 624 So. 2d 1041, 1043 (Ala. 1993). Because this cause of action is available only in the most egregious circumstances, very few cases present a question for the jury. *Id.* at 1044. A determination as to whether conduct is sufficiently objectionable to support a cause of action for outrage may be made by the trial court as a matter of law. *Logan v. Sears,*

*Roebuck & Co.*, 466 So. 2d 121, 123 (Ala. 1985). In fact, virtually every case in which state courts have allowed claims of outrage to go to the jury falls into one of three narrow categories: 1) "cases having to do with wrongful conduct in the context of family burials"; 2) cases in which "insurance agents employed heavy-handed, barbaric means in attempting to coerce the insured into settling an insurance claim"; and 3) cases "involving egregious sexual harassment." *Thomas*, 624 So. 2d at 1044.

Plaintiff argues that this case falls into the last category of permissible outrage claims. However, the Alabama Supreme Court has made it clear that the ordinary sexual harassment claim will not qualify for the tort of outrage. Courts have therefore turned away outrage claims based on fairly substantial allegations of sexual harassment. For example, in *McIsaac v. WZEW-FM Corporation,* 495 So. 2d 649 (Ala.1986), the Supreme Court of Alabama did not find the requisite outrageous conduct in a situation where the company's owner repeatedly requested that the plaintiff "have dinner with him, [] kiss him, or [] have an affair with him." *Busby v. Truswal Systems Corp.*, 551 So. 2d 322, 327 (Ala. 1989) (describing the facts of *McIsaac*). The court found no outrage claims even though the plaintiff was fired when she continually rejected the owner's advances. In *Brassfield v. Jack McClendon Furniture, Inc.*, 953 F. Supp. 1424, 1435-36 (M.D. Ala. 1996) the court, relying on *McIsaac*, held that no jury question of outrage existed when a co-worker routinely made comments and asked questions about the plaintiffs' breasts, how one of them ate bananas in a sexual way, whether they liked whips, and what their favorite sexual positions were.

Clearly the present case deals with sexual harassment, but plaintiff states at best a garden-variety claim of harassment. Nothing about the case marks it as particularly "egregious" or unusual. See *Thomas*, 624 So. 2d at 1044. Given the Alabama Supreme

12

Court's repeated admonition that outrage is not intended to become a general purpose tort for use in every-day litigation and "the limited nature of [the outrage cause of action]" *id.*, the court finds that the plaintiff's claim of outrage cannot survive summary judgement.[4]

### D.  Invasion of Privacy.

The plaintiff also asserts a cause of action for invasion of privacy relating to the alleged sexual harassment. *See McIsaac*, 495 So. 2d at 651 (holding that an action for invasion of privacy premised on sexual harassment is known as a wrongful intrusion into one's private activities), citing *Philips v. Smalley Maintenance Services*, 435 So. 2d 705, 708 (Ala. 1983). In *McIsaac*, the Supreme Court of Alabama held that a defendant's actions had to intrude into a plaintiff's "private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *McIsaac*, 496 So. 2d at 651. For example, in *Phillips*, the supreme court found liability where the defendant, over a three-month period, repeatedly interrogated the plaintiff behind locked doors about private sexual matters. In *McIsaac*, the supreme court did not find liability, stating that "'[e]ven the dire affront of inviting an unwilling woman to illicit intercourse has been held by most courts to be no such outrage as to lead to liability.'" *McIsaac*, 495 So. 2d at 652, quoting *Logan v. Sears, Roebuck & Co.*, 466 So. 2d at 124.

In this instance, as noted above Mr. Yearsley's alleged conduct does not reach the level of intrusive and coercive behavior contemplated by the Alabama Supreme Court in *Philips* and *McIsaac*. Therefore, the defendant's motion for summary judgment on the invasion of privacy claim will be granted, and the claim will be dismissed with prejudice.

---

[4] The defendant also contends that it cannot be held vicariously liable for Mr. Yearsley's actions. In light of its conclusion that the plaintiff cannot meet the basic requirements for an outrage claim, the court need not address this argument.

### E. Negligent Supervision/ Retention.

The plaintiff also claims that the defendant is liable for tortious conduct under the theory of negligent supervision/retention. The Alabama Supreme Court recognizes the tort of negligent supervision/retention. For the defendant to be held liable for negligent supervision/retention, Mr. Yearsley's alleged acts must have been within the line and scope of his employment or in furtherance of the employer's business. *Brown v. Vanity Fair Mills, Inc.*, 291 Ala. 80, 82 (1973). The Alabama Supreme Court has consistently held that acts of sexual harassment are considered to be purely personal and are outside the line and scope of employment as a matter of law. *Capital Alliance Co. v. Thorough-Clean, Inc.*, 639 So. 2d 1349, 1351 (Ala. 1994); *Busby*, 551 So. 2d at 327; *Doe v. Swift*, 570 So. 2d 1209, 1211 (Ala. 1990) ("[N]o corporate purpose could conceivably be served" by acts of sexual assault or harassment by an employee.); *Sparks v. Regional Medical Board*, 792 F. Supp. 735, 748 (N.D. Ala. 1992). Accordingly, summary judgment is also due to be granted on this claim.

### IV. Conclusion.

Accordingly, the defendant's motion for summary judgment on the plaintiff's federal claims of sexual harassment and retaliation under Title VII shall be denied. The defendant's motion for summary judgment on the plaintiff's state law claims of outrage, invasion of privacy, and negligent supervision and retention shall be granted.

Done, this 26th of July, 2000.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE